## NELLIE E. BARKER v. MARGARET E. BARKER.

Western Section. June 22, 1928.

Petition for Certiorari denied by Supreme Court, January 12, 1929.

Charles M. Bryan and Blan Maxwell, of Memphis, for plaintiff in error.

Harry Spears, of Memphis, for defendant in error.

HEISKELL, J.  This is an action for damages instituted in the Circuit Court of Shelby county, Tennessee, by Margaret E. Barker, against her mother-in-law, Nellie E. Barker, for the alienation of the affections of plaintiff's husband, Ralph Barker.  Upon a trial before the Honorable H. W. Laughlin, Judge, and a jury, a verdict was returned in favor of plaintiff in the sum of five thousand dollars ($5000), which verdict, upon motion for a new trial, was reduced to thirty-five hundred dollars ($3500) by the trial judge. The remittitur was accepted, under protest, by the plaintiff.  The defendant's motion for a new trial was overruled and she has brought the case to his court for review.

The first assignment of error is that there is no evidence to sustain the verdict.  The discussion of this assignment by counsel for defendant takes the form of a demurrer rather than a denial.  The contention is not so much that the plaintiff does not prove the facts alleged, as that these facts do not make a case for a recovery. The plaintiff's testimony must be taken as true, no matter what the preponderance may be.  We shall not discuss any of the many conflicts of testimony.  We shall not even try to set out the plaintiff's proof except as we see the substance and effect of it.

The plaintiff, born at Hornbeak, Tennessee, August 27, 1901, came to Memphis in September, 1924, to attend the Tennessee Normal School.  She met Ralph Barker and his mother, the defendant. She and the defendant were taken with each other more than she and Ralph.  The mother fell in love with the girl and the girl was attracted to the mother.  The mother approved of the plaintiff as a wife for Ralph.  Plaintiff met the Barkers on October 31, 1924, and when she went home at Christmas, the defendant wrote the love letters which Ralph copied and sent to the plaintiff at

Hornbeak. Plaintiff and Ralph were married on February 7, 1925, and went to live with his parents where they stayed until shortly before Easter when they moved into their own home. Immediately after the marriage the defendant put the plaintiff at heavy work in the household. She had been in the habit of taking Ralph's pay checks before the marriage, and kept it up afterwards. This left the young couple without spending money to go out to a show. On one occasion some one gave Ralph two tickets to a picture show and the defendant quarreled with them for not taking her with them. When plaintiff told her where Ralph got the tickets, she accused plaintiff of lying and trying to take her son away from her. Shortly after her marriage the defendant began to exhibit jealousy. She objected to Ralph kissing his wife before he kissed her when he went to work in the morning; insisted on being kissed first or not at all. Plaintiff humored this and had Ralph to refrain from kissing her in the presence of his mother. Defendant also objected to Ralph and his wife being by themselves and insisted on their staying in the living room with her and Ralph's father. Said Ralph had been used to doing this and she was not going to have him change.

After moving into their own house the young couple got along very well. Defendant came to see them often and insisted on Ralph coming to see her every day. Once he did not go until after supper and seemed upset by the visit. The next morning the defendant came into Ralph's house through the back door and there was a row in which she slapped plaintiff's face and started to hit her again when Ralph came between them. She also, in the words of plaintiff called plaintiff "everything that could be thought of that was low down" and threatened to kill her, broke some dishes she had given them; threatened to take away everything she had given them; told plaintiff that she had broken up her home by taking her son away; told her also that Ralph did not love her but loved another girl; accused plaintiff of having married Ralph for his car and his money. This scene wound up with defendant in a fainting spell and plaintiff in hysterics. Ralph took his wife to her uncle's where she remained in bed all day. At this time plaintiff was pregnant. Her child was born on November 18, 1925.

The day defendant slapped plaintiff when she told plaintiff that Ralph did not love her, plaintiff suggested that the best thing she could do would be to go home, and defendant said "go on home and I will get Ralph back where I had him before." After the baby was born, defendant objected to plaintiff's method of feeding it and objected to Ralph carrying the baby. Then plaintiff says that Ralph's manner toward her began to change. He went away

for about a week in July, 1926, and in October, 1926, while she was on a visit to her home at Hornbeak, he moved all the furniture out of the house and when she returned after a two weeks' visit, he was gone and she could not find him. Asked defendant if she knew and defendant said he was out of the city but she did not know where he was. On the 17th of November, 1926, this suit was brought. It is insisted that these facts do not show that defendant caused her son to leave his wife, and do not show any malice on the part of the defendant. The question is, from all these facts, was the jury warranted in finding that defendant caused the separation? It is argued that all that took place in the early days of the marriage cannot be considered in reaching such conclusion. In a sense this may be true, but the evidence is very material as going to show the complex of the defendant. From this evidence no doubt, the jury began to construct her character, a woman of strong will, with one child, a son, whom she loved and loved to dominate. The son of not so strong a disposition as his mother, had been brought up under her strong affectionate domination and did not object to it. He let her handle his pay checks after he was twenty-five years old and after he was married. She met the plaintiff and liker her and saw that the son liked her. She expressed the idea that plaintiff would make a hard-working wife for Ralph, and set herself to bring about the marriage and was pleased with it. And then she found herself in a position she had never imagined, and as many another woman has done, she broke under it. She could not bear to see any other woman come between her and her son. Selfish as well as dominating in her affection, she was not willing to share that affection with another woman. She had not thought of this. She thought they would be happy together. She found Ralph's love for a younger woman painful to her. It was not a trifling thing when the mother demanded that the husband should kiss her in preference to his young bride. It was not a small matter when she objected to the young couple being by themselves in the evening and insisted on the son keeping company with her as he had always done. It was indication of what was to come. She could be affectionate and kindly with her daughter-in-law at times and no doubt if the young wife had been as yielding and complaisant as Ralph, things would have gone on better. But she had a temper, as well as the defendant and when they clashed, things flashed and flamed.

Then when the defendant went to the home of plaintiff, who was then some months advanced in pregnancy and slapped and abused plaintiff and after the child was born insinuated that Ralph was not its father, we can imagine the jury concluding that the de-

fendant's affection for plaintiff had turned to such bitter hatred that it might account for almost anything. Finally, when the separation came, we can conceive how the jury might even have believed the defendant was not sincere when she said she did not know where Ralph was.

We do not imagine the plaintiff was free from fault, but this was a matter for the jury to consider for whatever effect it might have upon their estimate of defendant's conduct and intention. It is finally not incredible that the jury should have concluded that the defendant became so obsessed with hatred and jealousy as to determine to separate plaintiff and her husband and get Ralph back for herself under her own domination, and when the jury reached this conclusion it would carry with it the idea of malice.

It would be difficult to imagine a case in which the trial court and jury would have a greater advantage over the appellate court, in weighing the evidence, than in this case. It is a case in which there is a peculiar advantage in having the witnesses testify in person. It is a case in which eye and tone of voice and gesture may carry a meaning that cannot be transmitted to the written page, a case in which actions on the stand may speak louder than words. It is therefore a case in which peculiar weight should be given to the finding of the jury approved by the court.

The second assignment is that the amount of the verdict is excessive. We know of no standard of measure by which to say this is true and we decline to so hold.

The third assignment is that the court erred in refusing to grant a new trial for newly discovered evidence. The letter from defendant to her son was written after the suit was brought and after defendant had been served with process. It might be a self-serving declaration.

It is insisted that the copy of Ralph's application for a position in Atlanta is evidence that he was out of work. The evidence that he was out of work was before the jury and was not contradicted. Further evidence was immaterial. Mrs. Thayer claims that she read affectionate letters written by Ralph to plaintiff from Atlanta, but Ralph does not claim to have written such letters from Atlanta. And Mrs. Thayer so far as her testimony as to defendant's knowledge goes, could not well know what her sister knew and what she did not know. We find no error in this action of the court.

The fourth assignment is that the court, after setting out the theory of the defendant, says this to the jury: "Now gentlemen, if you find these alleged facts to be true from the evidence, then

you should find for the defendant and your verdict should be for her.''

''This charge was error in that the jury was instructed that they had to accept defendant's theory of the case in order to find a verdict for her, the law on the contrary being that the jury was required to accept the plaintiff's version of the case and find it established by a preponderance of the evidence in order to find a verdict for her, even if the jury did not believe the theory of the defendant.

''In short, the jury was told that they had two theories that of the plaintiff and that of the defendant, and that they should accept one or the other of them. They were not told that they might accept part of each theory.''

The court, after setting out fully the allegations of the declaration and stating that defendant pleads not guilty, then tells the jury that the defendant puts in issue and denies every material allegation in the plaintiff's declaration and casts upon the plaintiff the necessity of proving each and every allegation in her declaration necessary to make out her case by a preponderance of the evidence.

Again after stating the theory of the plaintiff, the court tells the jury if they find these facts true from the preponderance of the evidence, they can find for the plaintiff.

After stating the defendant's theory the jury is told: ''If you find these facts true from the evidence, you can find for the defendant.'' In order to recover, the plaintiff must make out her case, must prove all material facts alleged, by the preponderance of the evidence before she can recover. If the plaintiff fails in this, the jury cannot find for her, irrespective of defendant's proof. The force and effect of this charge is not destroyed by stating defendant's theory of the case and telling the jury if they believe these facts they can find for defendant. In effect the court tells the jury they must find for the defendant unless the plaintiff proves her material allegations by a preponderance of evidence. The jury is told that they cannot bring in a verdict for plaintiff unless her charges are sustained by a preponderance of the evidence. A failure to find for the plaintiff would be to find for defendant.

As to the last clause of this assignment that it was error in that the court did not set out correctly the theory of defendant and failed to charge the defendant must be guilty of malice to enable plaintiff to recover, this objection is not made in the motion for a new trial, and cannot therefore be raised in this court. Besides the declaration as set out charges malice in express terms and the jury is told that the allegations of the declaration must be estab-

lished by a preponderance of proof before plaintiff can have a verdict.

The fifth assignment is:

"The trial court erred in failing to charge the jury in any part of the charge that it was necessary for malice to appear in order that the defendant might be held liable, but allowed the jury to take the case upon the theory that the defendant could be held liable no matter how high her motives or whether or not she was actuated solely by a desire to forward her son's welfare and not by malice. Malice was an essential ingredient to establish the basis of recovery against the defendant in this case, who was the mother of the plaintiff's husband."

As we have just shown under the preceding assignment, the court in charge to the jury set out the declaration in substance. This part of the charge shows that plaintiff alleged that the conduct of defendant was for the unlawful, willful and malicious purpose of causing plaintiff's husband to lose his love and respect for her. In this statement of the allegations of the declaration the words willful and malicious are repeated several times, and the jury is told that in order to gain a verdict the plaintiff must prove these allegations by a preponderance of the evidence. We think this amounted to telling the jury that malice must be made out.

Besides, the word "malice" is not so important as the nature of the conduct from which malice can be presumed. In 13 R. C. L., p. 1471, sec. 521, it is said:

"Nor is the malice to be proved against a parent for advising his married child to abandon his wife or her husband, alone such malice as must proceed from a malignant and revengeful disposition; the terms 'malice' and 'improper motives' as here used mean the same thing. It has been held sufficient to prove that the parent's action was taken without proper investigation of the facts, or that the advice was given from recklessness or dishonesty of purpose, the law presuming malice from such conduct in actions of this nature."

Direct evidence of wrongful or improper motives is not required but may be inferred from conduct. 13 R. C. L., p. 1472, sec. 525; Brown v. Brown, 124 N. C., 19; Roland v. Stanley, 88 Ark., 562.

In an action against a parent more evidence is required to show malice or improper motives than in an action against a stranger, but the difference is a matter of degree and not of kind of evidence. 46 L. R. A. (N. S.), 465.

All assignments of error are overruled and the judgment of the lower court is affirmed. The defendant and surety on her appeal bond will pay the costs of appeal.

Owen and Senter, JJ., concur.